**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| XANADU MARKETING INC., and EDUCATION ASSISTANCE, INC.<br><br>Plaintiff,<br><br>v.<br><br>NATHEN BARTON<br><br>Defendant | : | Case No. ________________________<br><br>COMPLAINT AND JURY DEMAND |

## COMPLAINT

Plaintiff Xanadu Marketing and Education Assistance by and through its undersigned counsel, Dawn R. Van Dusen states the following as its Complaint against Defendant, Nathen Barton, and alleges as follows:

## INTRODUCTION

1. This is civil action for civil fraud, wire fraud (18 U.S.C. § 1343), and for violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964(c).

2. Defendant, Nathan Barton, is a serial plaintiff, who frequently pursues claims against businesses, including healthcare providers, under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"). Mr. Barton's claim-seeking behavior has been identified as improper at-times, including in a recent case in Western District of Washington and Superior Court of Clark County in Washington, in

which the Court found that Mr. Barton invited communications from TCPA Mr. Bartons, thereby precluding his action against those Plaintiffs..

3. Mr. Barton has now evolved his claim-seeking scheme by adopting one or more aliases in order to invite call-backs from businesses to telephone numbers that Mr. Barton has registered under the "do not call" list.

4. By adopting false names and identities in order to encourage this call-backs, Mr. Barton has crossed the line and committed fraud.

5. Upon information and belief, Mr. Barton has acted with the intention of fraudulently using false identities in order to further his scheme to pursue TCPA claims as a vocation.

6. While Congress has established a private right of action under the TCPA to ostensibly encourage private enforcement, a plaintiff is precluded from pursuing such claims when the plaintiff invites the call-back to a phone number on the "do not call" list.

7. Mr. Barton's actions have gone a step further, by attempting to disguise himself through the use of one or more aliases in order to deceive businesses to make such call-backs and later falsely claim that such calls were uninvited.

8. The Plaintiffs in this civil action, Xanadu Marketing Inc. and Education Assistance Inc. ("Plaintiffs") are both victims of Mr. Barton's fraud.

9. Plaintiffs assist individuals in finding education loan options, Mr. Barton responded to inquiries from prospective clients via online generated leads, then Plaintiffs found the best deal on education loan options that Mr. Barton was never interested in receiving.

10. In delivering these educational loan options, Plaintiffs' business depends on truthful information from potential clients. Plaintiffs must trust that when an individual calls seeking educational loan solutions, those details are accurate and genuine. False information can lead to improper quotes, regulatory compliance issues, and other serious problems. Fraudulent inquiries are not harmless – they can divert resources from real clients in need and jeopardize Plaintiffs' standing with clients and business partners.

11. Mr. Barton is an individual who, at all relevant times, maintained and used numerous cellular telephone to manufacture lawsuits.

12. On or about April 1, 2021, Mr. Barton received a text message from Plaintiffs containing a link concerning applying for an education loan option.

13. Mr. Barton clicked the link contained in the text message using his cellular telephone.

14. After clicking the link, Mr. Barton was directed to a webpage located at educationalassistance.com, which solicited information so a person can receive educational loan options.

15. Mr. Barton proceeded to interact with Plaintiffs website by clicking various links and answering questions presented on the website.

16. During his interaction with the website, Mr. Barton provided certain information requested by the website, including contact information and his cellular telephone number.

17. Mr. Barton also provided an address and zip code in response to questions presented on the website. The address provided was an actual address in Vancouver, Washington, although Mr. Barton was not the owner of that property.

18. Mr. Barton understood that providing information through the website would result in additional information being provided to him concerning the solicitation he had received.

19. Instead, after Mr. Barton interacted with Plaintiffs website and provided his cellular telephone number, his cellular telephone began receiving additional educational loan options.

20. Among the communications Mr. Barton received telephone calls and a text message purportedly associated with Plaintiffs companies.

21. Mr. Barton never contacted Starter Home Programs and requested that he be placed on its do-not-call list.

22. In his September 9, 2021 communication to Plaintiffs, Mr. Barton expressly stated that he was interested in receiving education loan options or marketing calls, text messages, or voicemails from Plaintiffs, its clients, customers, affiliates, or partners.

23. Plaintiff brings this action based upon the foregoing communications and the conduct of Mr. Bartons in initiating, transmitting, directing, facilitating, or participating in the alleged solicitations. Ultimately, Mr. Barton's conduct was a deliberate and malicious fraud. In truth, Mr. Barton was engineering a fraud: by posing as a client and giving false information, he intended to trick Plaintiff's business into acting on the false claims, potentially to later exploit those interactions for personal gain.

24. Plaintiff brings this action to hold Mr. Barton accountable for his fraudulent misrepresentations and to prevent further abuse. Plaintiff seeks compensatory damages for the time, resources, and costs wasted by Mr. Barton's fraud, punitive damages given Mr. Barton's willful and malicious conduct, and injunctive relief to bar Mr. Barton from engaging in such fraudulent schemes in the future. Plaintiff is determined to put an end to Mr. Barton's pattern of abusive tactics and serial litigation schemes that target legitimate companies.

25. In 2021, Plaintiff brought a civil suit against Plaintiff, Xanadu Marketing, Inc for violation of the Telephone Communications Act ("TCPA") in the Western District of Washington. At a jury trial on June 26, 2026, Plaintiff received a verdict in its favor.

26. In November, 2024, Plaintiff brought a civil suit against Plaintiff Educational Assistance, Inc. for violation of the TCPA, in Superior Court of Clark County. Prior to a jury trial scheduled for October 5, 2026, Plaintiff dismissed Education Assistance, Inc. from the civil suit.

**<u>Parties</u>**

27. Plaintiff Xanadu Marketing ("Xanadu" or "Plaintiff") is a Michigan corporation with its principal place of business at O-745 Lake Michigan Dr NW, Grand Rapids MI, 49534.

28. Plaintiff Educational Assistance, Inc. ("Educational" or "Plaintiff") is a Michigan corporation with its principal place of business at O-745 Lake Michigan Dr NW, Grand Rapids MI, 49534.

29. Mr. Barton Nathan Barton is, upon information and belief, an individual residing in the Clark County, Washington

30. Mr. Barton is not a customer or client of Plaintiff, but rather a person who, as described above, engaged in a fraudulent scheme targeting Plaintiffs. Upon information and belief, Mr. Barton  is a serial litigant who has filed dozens of lawsuits under the TCPA and related statutes, fabricating scenarios to provoke calls or interactions with companies and then suing those companies for financial gain.

**Jurisdiction and Venue**

31. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1367 because, inter alia, Plaintiffs brings claims under RICO and for wire fraud and all other claims are supplemental to the same.

32. Alternatively, this Court has diversity jurisdiction under 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000 exclusive of interest and costs, and Plaintiff (a company in Michigan) and Mr. Barton (upon information and belief, a citizen of Washington) are citizens of different states. The amount in controversy, including the value of Plaintiff's losses and the punitive and injunctive relief sought, exceeds $75,000.

33. This Court has personal jurisdiction over Mr. Barton because Mr. Barton's fraudulent acts were purposefully directed toward a Michigan corporation and occurred (via telephone communications) in this District. Mr. Barton initiated contact with Plaintiffs Michigan offices, provided a Washington address (albeit falsely) as his residence. Mr. Barton's acts caused harm to Plaintiffs in Michigan, and he should reasonably anticipate being haled into court in Michigan as a result of his intentional misconduct.

34. Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Without limitation, Mr. Barton directed his false representations via telephone calls to Plaintiffs, which is located in this District.

**Count I - Fraud**

35. Plaintiff incorporates by reference all other allegations and paragraphs of this Complaint and, to the extent necessary, pleads this Count in the alternative.

36. Mr. Barton made multiple representations of material facts to Plaintiffs, including, but not limited to the following:

A. That the Fake Client existed and that Mr. Barton's name was actually the Alias;

B. That the Fake Client was the owner of the Call Back Number;

C. That the Fake Client lived at a residence in Vancouver, WA;

D. That the Fake Client wished to form a relationship with Plaintiffs for the inquiry into educational loan options, deals and offers.

37. These representations were each false when made.

38. Mr. Barton knew that these representations were false when made.

39. Mr. Barton made these representations with the intention that Plaintiffs rely on them.

40. Without limitation, Mr. Barton utilized the Alias and the related story regarding the needs of the Fake Client in order to set-up a fraudulent TCPA case against Plaintiffs after it called the Call Back Number.

41. Plaintiffs relied on these false representations.

42. Plaintiffs were damaged as the result of its reliance.

43. Without limitation, Plaintiffs incurred expense in pursuing a business relationship with the Fake Client.

44. Plaintiffs further incurred expense, including administrative expense and legal fees, after discovering that the Fake Client was likely a falsified identify of Mr. Barton, that was used to "catfish" Plaintiffs into calling the Call Back Number. This included pre-litigation expense required to address the potential of a fraudulent TCPA claim from the serial TCPA claimant, Mr. Barton.

45. Plaintiff, Xanadu, has further suffered humiliation and embarrassment due to pursuing communications with third parties, for a Fake Client, which has caused harm to Plaintiffs' professional reputation.

46. Therefore, Plaintiff seeks damages in excess of $75,000, including direct damages, exemplary damages, punitive damages, attorneys fees, costs, interest, and all other elements of damages available at law.

47. Plaintiff further seek a preliminary and permanent injunction to preclude Mr. Barton from making any contact, directly or indirectly, whether under his real name, the Alias, or any other false name, with Plaintiffs and/or any of its affiliates.

**Count II - Wire Fraud; Civil RICO**

48. Plaintiff incorporates by reference all other allegations and paragraphs of this Complaint and, to the extent necessary, pleads this Count in the alternative.

49. Pursuant to 18 U.S.C. § 1964, a person injured through a violation of RICO (18 U.S.C. 1962), may sue for and recover threefold damages, the costs of a lawsuit, and reasonable attorneys fees.

50. Pursuant to 18 U.S.C. § 1962(c), "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

51. Mr. Barton is an "enterprise" under RICO because that term, as defined, includes an individual. 18 U.S.C. § 1961.

52. Upon information and belief, Mr. Barton is or may have been, engaged in a wider enterprise with his friend and associate, Diana Bartolomei, and the limited liability company that they co-own, TCPA University, which operates in Clark County, Washington.

53. Mr. Barton is further a person associated with these enterprises.

54. Mr. Barton further conducted the activities of these enterprises through a pattern of racketeering activity.

55. Without limitation, Mr. Barton's actions constitute wire fraud pursuant to 18 U.S.C. § 1343, which a form of "racketeering activity" under 18 U.S.C. § 1961.

A. Mr. Barton voluntarily and intentionally devised and participated in a scheme to defraud Plaintiffs out of money.

i. Without limitation, he utilized false information, including the Alias, in order to encourage and "catfish" Plaintiffs into to calling the Call Back Number for the purpose of establishing a false TCPA claim.

B. Mr. Barton did this with the intent to defraud.

C. It was reasonably foreseeable that interstate wire communication would be used.

D. Without limitation:

i. Mr. Barton called from a Washington-based telephone number during the series of calls involved;

ii. The original call center called Mr. Barton. Thus, it was likely that the call would be through interstate commerce;

iii. Plaintiffs receive inquiries from prospective clients through online generated leads and are clear about this.

E. Interstate communications were, in-fact, used by Mr. Barton during each of the calls in which he utilized the false information.

56. These Racketeering Activities were a pattern in-and-of-themselves because Mr. Barton used multiple fraudulent wire communications to perpetrate his scheme.

57. Furthermore, upon information and belief, Mr. Barton, as a serial TCPA plaintiff, has utilized his wire fraud schemes with regard to other unsuspecting companies in a manner similar to the fraud he perpetrated against Plaintiffs.

58. Upon information and belief, Mr. Barton has utilized his schemes to "catfish" companies for the purpose of establishing fraudulent TCPA claims for a continuous period of years.

59. Accordingly, pursuant to 18 U.S.C. § 1964, Plaintiffs seeks damages in excess of $75,000, including treble damages, costs, and reasonable attorney's fees.

**Count III – Malicious Prosecution**

60. Plaintiffs' incorporates by reference all other allegations and paragraphs of the Complaint and, to the extent necessary, pleads this Court in the alternative .

61. Mr. Barton instituted and/or caused to be instituted two separate civil judicial proceedings against Plaintiffs, each without probable cause and for an improper purpose.

The first civil action was styled Barton v. Delfgauw et al., Case No. 3:21-cv-05610-DGE, filed in the United States District Court for the Western District of Washington at Tacoma on or about August 23, 2021 (the "First Action") .

62. The second civil action was styled Barton v. Delfgauw, Case No. 24-2-04347-06, filed in the Superior Court of the State of Washington for the County of Clark on or about December 17, 2024 (the "Second Action").

63. The First Action and Second Action were separate and distinct judicial proceedings initiated and prosecuted by Mr. Barton against Plaintiffs.

64. Mr. Barton lacked probable cause to institute or continue the First Action.

65. At the time Mr. Barton commenced the First Action, Mr. Barton knew that they had clicked onto the website.

66. Mr. Barton nevertheless instituted and continued the First Action against Plaintiffs.

67. Mr. Barton also lacked probable cause to institute or continue the Second Action.

68. At the time Mr. Barton commenced the Second Action, Mr. Barton knew that the data entries relied upon originated from third-party form submissions where no

verification steps were taken to confirm actual ownership or control of the telephone number, and that joint stipulations and admissions made it impossible to carry a burden of proof for common law fraud.

69. Mr. Barton nevertheless instituted and continued the Second Action against Plaintiff .

70. The institution of the Second Action was particularly improper because Mr. Barton had already clicked on the website, thereby demonstrating Mr. Barton's knowledge of the facts and circumstances undermining the claims asserted in the Second Action .

71. The First Action terminated in Plaintiff's favor on or about June 25, 2026, when the court entered a judgment.

72. The Second Action was dismissed by Mr. Barton prior to a scheduled jury trial on October 5, 2026.

73. The termination constituted a favorable termination of the respective proceeding.

74. Neither proceeding has been terminated as a result of Plaintiff's admission of liability, an improper compromise, or a disposition inconsistent with Plaintiff's position on the merits.

75. Mr. Barton acted with malice in instituting and continuing both the First Action and the Second Action.

76. Mr. Barton's purpose was not to secure the proper adjudication of legitimate claims, but instead was to harass, financially burden, and damage Plaintiffs.

77. Mr. Barton's institution and prosecution of the First Action and Second Action were part of a continuing course of conduct intended to subject Plaintiff to repeated and unnecessary civil litigation.

78. Plaintiff also incurred substantial attorneys' fees, litigation expenses, lost income and/or business opportunities, and other damage as a direct and proximate result of Mr. Barton's conduct.

79. Plaintiff's damages arising from the First Action and Second Action are separate and additional to one another to the extent permitted by law.

80. Mr. Barton's conduct was intentional, willful, and malicious and was undertaken for a purpose other than securing the proper adjudication of legitimate civil claims.

81. As a direct and proximate result of Mr. Barton's malicious prosecution of the First Action and Second Action, Plaintiffs suffered damages in an amount to be established at trial.

**Count IV - Defamation**

82. Plaintiffs incorporates by reference all other allegations and paragraphs of this Complaint and, to the extent necessary, pleads this Count in the alternative.

83. Mr. Barton published false and defamatory statements concerning Plaintiffs to third parties.

84. The statements were capable of defamatory meaning and tended to harm Plaintiffs' reputation, standing, or business interests.

85. The statements were false.

86. Mr. Barton published the statements to persons other than Plaintiffs.

87. Mr. Barton was at fault in publishing the statements, including because Mr. Barton knew, or acted with reckless disregard as to whether the statements were false and defamatory.

88. The statements were not privileged.

89. As a direct and proximate result of Mr. Barton's defamatory statements, Plaintiffs suffered injury to its reputation and business interests and sustained damages in an amount to be established at trial.

**<u>Count V – Tortious Interference of Contract</u>**

90. Plaintiffs incorporates by reference all other allegations and paragraphs of this Complaint and, to the extent necessary, pleads this Count in the alternative.

91. Plaintiffs have valid contractual relationships with third parties.

92. Mr. Barton knew or had knowledge of facts sufficient to establish knowledge of, Plaintiffs' contractual relationships.

93. Mr. Barton intentionally interfered with Plaintiffs' contractual relationships.

94. Mr. Barton's interference was improper and unjustified.

95. Mr. Barton's interference caused, or was intended to cause, a breach of or disruption to Plaintiffs' contractual relationships.

96. Plaintiffs suffered damages as a direct and proximate result of Mr. Barton's interference.

97. As a direct and proximate result of Mr. Barton's conduct, Plaintiffs suffered damages in an amount to be established at trial.

**WHEREFORE**, Plaintiffs' respectfully requests that the Court enter Judgment in his favor and against Mr. Barton, Nathan Barton, and grant injunctive relief and damages in excess of $75,000, including any/all available elements of damages or recovery, including but not limited to the following:

A. Direct damages;

B. Treble Damages:

C. Exemplary Damages;

D. Punitive Damages;

E. Attorneys Fees;

Plaintiff further requests that the Court grant any other relief that is just and equitable.

Respectfully Submitted,

**Dated: October 28, 2026**

___/s/ Dawn R. Van Dusen
Dawn R. Van Dusen (P69647)
2715 Airport Road
Adrian, MI 49221
517-270-2193
dawnvandusen@gmail.com